```
                                                            USDC SDNY
                                                            DOCUMENT
                                                            ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                                DOC #: _____
SOUTHERN DISTRICT OF NEW YORK                               DATE FILED: March 24, 2014
------------------------------------------------------------------ X
                                                          :
CROSS COMMERCE MEDIA, INC.,                               :
                                                          :
                    Plaintiff/Counterclaim                :       13 Civ. 2754 (KBF)
                    Defendant,                            :
         -v-                                              :       OPINION & ORDER
                                                          :
                                                          :
COLLECTIVE, INC.,                                         :
                                                          :
                    Defendant/Counterclaim                :
                    Plaintiff.                            :
                                                          :
------------------------------------------------------------------ X
```

KATHERINE B. FORREST, District Judge:

On April 25, 2013, Cross Commerce Media, Inc. ("CCM") brought this declaratory judgment action against Collective, Inc. ("Collective"). (Compl. ¶ 1, ECF No. 1.) CCM seeks a declaration that its use of the mark "Collective[i]" does not infringe any of Collective's three trademarks that use the word "collective"— "Collective Network," "Collective Video," and "C Collective The Audience Engine" (hereinafter, the "Collective Marks"). (Id. ¶¶ 1, 10.)[1]

On May 16, 2013, Collective answered the complaint and counterclaimed against CCM for infringement of unregistered and registered trademarks, pursuant to 15 U.S.C. §§ 1125(a) and 1114, and unfair competition under New York law. (Answer & Counterclaims ¶¶ 82-92, ECF No. 5.)

---

[1] CCM also seeks an order, pursuant to 15 U.S.C. § 1119, canceling the Collective Marks or, in the alternative, compelling disclaimer of the word "collective" apart from the Collective Marks. (Compl. ¶¶ 40-43.)

Discovery is ongoing and this matter is scheduled for trial on July 28, 2014. On December 18, 2013, CCM moved for partial summary judgment on two issues: (1) that the word "collective," on a stand-alone basis and as used by Collective, is descriptive, and (2) that, even if Collective can establish that it has a valid trademark in "collective" as a stand-alone mark, any such rights are commercially weak because of extensive third-party usage of the mark. (CCM Mem. of Law at 1, ECF No. 33.) On January 21, 2014, Collective opposed the motion on the grounds that the word "collective" is not merely descriptive, and that the issue of the strength of the mark is not ripe for decision at this stage in the litigation (Collective Opp. at 2-3, ECF No. 37), and moved to continue or defer the motion pursuant to Federal Rule of Civil Procedure 56(d) in light of ongoing discovery (Collective 56(d) Motion ¶ 1, ECF No. 40). CCM's motion for partial summary judgment became fully briefed on January 30, 2014, and Collective's motion pursuant to Rule 56(d) became fully briefed on February 11, 2014.

For the reasons set forth below, CCM's motion for partial summary judgment is GRANTED in part and DENIED in part, and Collective's motion pursuant to Rule 56(d) is GRANTED in part and DENIED in part.

I.  FACTS

In connection with its motion for partial summary judgment, CCM submitted a statement of material facts pursuant to Local Civil Rule 56.1 ("CCM SOF") (ECF No. 32), a response to Collective's statement of additional facts pursuant to Local Civil Rule 56.1 ("CCM RSOF") (ECF No. 46), and an affidavit from Rebecca Morse ("Morse Aff.") (ECF No. 34).  Collective submitted a combined response to CCM's statement of material facts and statement of additional facts pursuant to Local Civil Rule 56.1 ("Col. RSOF" and "Col. SOF," respectively) (ECF No. 39), and a declaration from Edward Dandridge ("Dandridge Decl.") (ECF No. 38).  In support of its motion pursuant to Rule 56(d), Collective submitted two declarations from Eric Andalman ("[Date] Andalman Decl.") (ECF Nos. 41, 51); in opposition, CCM submitted a declaration from Marc Rachman ("Rachman Decl.") (ECF No. 49).

The following facts are undisputed unless otherwise noted.

Collective has registered the following marks with the U.S. Patent & Trademark Office ("PTO"):  "Collective Network," "Collective Video," and "C Collective The Audience Engine."  (Col. RSOF ¶ 2.)  Collective describes these marks as involving Internet-based advertising networks in its registrations with the PTO.  (Id. ¶¶ 3-6.)  These registrations further describe the advertising networks as, inter alia, connecting online publishers with online advertisers for buying and selling online advertisements, or connecting online advertisers with online publishers of video content.  (Id. ¶¶ 4-6.)  Collective does not own a trademark registration in the stand-alone word "collective."

CCM is in the business of data management, analytics, and modeling. (See Col. SOF ¶ 9; CCM Mem. of Law at 3.) In January 2011, it began using the mark "Collective Intelligence," for which it had previously filed an Intent to Use ("ITU") application with the PTO. CCM obtained a word mark for "Collective Intelligence" in May 2012. CCM also filed ITU's for "Collective IQ," "CIQ," and "Collectivei" in March 2011. In late 2011, CCM began using the mark "Collective[i]."[2]

There is no allegation in this case that CCM has used any of the Collective Marks. Rather, the issue before this Court is whether Collective has a right to exclude CCM from use of the word "collective" in its mark.

A search of the PTO's Trademark Electronic Search System ("TESS") for the word "collective" returned 534 results as of November 26, 2013. (CCM SOF ¶ 8.) In 186 instances, the PTO has either required disclaimer of the use of the word "collective" as being descriptive or rejected a mark application using the word "collective" on the same basis. (Id. ¶ 14.) The word "collective" is used in the name of over 7,000 businesses registered in 45 states across the country as of December 9, 2013. (Id. ¶ 9.) There are over 500 entities in New York and over 3,000 in California that use the word "collective" in their name. (Id. ¶ 10.) There are over 25,000 Internet domain names that contain the word "collective." (Id. ¶ 12.) There are more than a dozen companies in the digital advertising and marketing field that also use the word "collective" in connection with their name and/or goods and services. (Id. ¶ 13.)

---

[2] In its original form, "Collective[i]" was preceded by a graphic of a lower case "i" inside of a sideways upper case "C," which resembled the "power button" symbol. CCM has been using the Collective[i] mark in its current form since January 2012.

There have been a handful of instances in which Collective has received inquiries relating to CCM's business and the "Collective[i]" mark. (See Dandridge Decl. ¶ 16.)

As of the filing of these motions, discovery was scheduled to close on April 21, 2014; by order dated February 24, 2014, this deadline was extended to May 30, 2014. (See ECF Nos. 29, 54.) As of the filing of these motions, the parties had exchanged less than 3,000 pages of hard-copy documents but no "electronic" documents, and had not taken any depositions. (1/21/14 Andalman Decl. ¶¶ 4-5; 2/11/14 Andalman Decl. ¶ 2; Rachman Decl. ¶ 4.) The parties had not disclosed experts or presented expert reports. (1/21/14 Andalman Decl. ¶ 6.) According to Collective, it needs additional discovery (particularly expert discovery, in the form of survey research) in order to develop evidence relating to the strength of "collective" as a stand-alone mark. (Id. ¶¶ 7-9.) According to Collective, it has retained an expert to perform this survey research, which will be completed by the close of discovery. (Id. ¶ 8.)

II.     STANDARD FOR SUMMARY JUDGMENT

Summary judgment may not be granted unless the movant shows, based on admissible evidence in the record placed before the court, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In making a determination on summary judgment, the court must

"construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 539 F.3d 159, 166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d at 685 ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.").

Only disputes relating to material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

The Court may deny or defer consideration of a motion for summary judgment if the nonmovant shows "that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). This rule reflects the concern that the "nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment." Trebor Sportswear Co. v. The Ltd. Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989). Nevertheless, "the party opposing summary judgment is not automatically entitled to discovery." Seneca Beverage Corp. v. Healthnow N.Y., Inc., 200 F. App'x 24, 27 (2d Cir. 2006) (citing Gualandi v. Adams, 385 F.3d 236, 244-45 (2d Cir. 2004)). Rather, the nonmoving party must support the opposition by affidavit or declaration describing: "(1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." Gualandi, 385 F.3d at 244 (citations omitted). Bare references to the need for additional discovery are, by themselves, insufficient. See Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994).

III.   ANALYSIS

CCM's motion for partial summary judgment concerns (A) whether the word "collective," as used by Collective, is descriptive, and (B) whether, even if Collective can establish it has a valid trademark in "collective" as a stand-alone mark, the strength of any such rights are commercially weak or heavily diluted. Issues relating to any secondary meaning that may have attached to Collective's use of the

7

word, and the questions of infringement, cancelation, and modification, are left to another day.

    A.    <u>Descriptiveness of "Collective"</u>

Courts classify marks into one of four categories in increasing order of inherent distinctiveness: (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary and fanciful. See <u>The Sports Auth., Inc. v. Prime Hospitality, Inc.</u>, 89 F.3d 955, 960 (2d Cir. 1996).

A descriptive mark is one that "forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods." <u>Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.</u>, 973 F.2d 1033, 1040 (2d Cir. 1992) (internal quotation marks omitted) (citing <u>Abercrombie & Fitch Co. v. Hunting World, Inc.</u>, 537 F.2d 4, 11 (2d Cir. 1976)). "[A] term can be descriptive in two ways. It can literally describe the product, or it can describe the purpose or utility of the product." <u>Bristol-Myers Squibb</u>, 973 F.2d at 1040 (internal quotation marks and citations omitted).

A term is "suggestive" if it "requires imagination, thought and perception to reach a conclusion as to the nature of the goods." <u>Id.</u> (citing <u>Abercrombie & Fitch</u>, 537 F.2d at 11). "Although the line between descriptive and suggestive may be difficult to discern, the consequence of the classification is important. A descriptive term is subject to protection under [15 U.S.C. § 1125(a)] only if the proponent of protection demonstrates that, in addition to the ordinary meaning of the word or words, the term has acquired a secondary meaning in its market—that the consuming public primarily associates the term with a particular source." Bristol-

8

Myers Squibb, 973 F.2d at 1040 (citations omitted).  Courts must consider the descriptiveness of a mark "in relation to the particular goods for which registration is sought, the context in which it is being used, and the possible significance that the term would have to the average purchaser of the goods because of the manner of its use or intended use."  Coach Servs., Inc. v. Triumph Learning LLC, 668 F.3d 1356, 1378 (Fed Cir. 2012) (internal quotation marks and citations omitted).

"Registration by the PTO without proof of secondary meaning creates the presumption that the mark is more than merely descriptive, and, thus, that the mark is inherently distinctive."  Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1995).  A party may rebut this presumption of protectability by a preponderance of the evidence.  Id.  Here, however, it is undisputed that the Collective Marks each use the word "collective" in combination with another word—Collective Video, Collective Network, and C Collective The Audience Engine.  Put another way, Collective does not have a registered mark in the word "collective" by itself.  The owners of unregistered marks may also bring an action for infringement, though, as a threshold matter, the holder of the mark must be able to demonstrate that it is entitled to protection.  See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992).

"Evidence that a term is merely descriptive may be obtained from any competent source, such as dictionaries, newspapers, or surveys."  Coach Servs., 668 F.3d at 1378 (internal quotation marks and citations omitted).  Such evidence may include examples of third-party use of the mark as well PTO decisions and office

actions (for both the mark at issue and in unrelated third-party applications). Id. at 1378; Murphy Door Bed Co., Inc. v. Interior Sleep Sys., Inc., 874 F.2d 95, 101 (2d Cir. 1989); Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1564-65 (Fed Cir. 1987); M & G Elecs. Sales Corp. v. Sony Kabushiki Kaisha, 250 F. Supp. 2d 91, 98 (E.D.N.Y. 2003) ("District courts within this circuit have recognized the great deference owed to the PTO's decisions.") (citing cases).

The classification of a trademark—whether as descriptive, suggestive, or otherwise—may be decided on summary judgment as a matter of law where there is no genuine issue of material fact for trial as to the issue. See, e.g., Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers of N.J., 894 F. Supp. 2d 288, 314 (S.D.N.Y. 2012); see also Bernard v. Commerce Drug Co., 964 F.2d 1338, 1340-42 (2d Cir. 1992).

The word "collective," as used by Collective, is descriptive. "Collective" is defined in the online Merriam-Webster Dictionary as, inter alia, "denoting a number of persons or things considered as one group or whole," "formed by collecting: aggregated," and "of, relating to, or being a group of individuals." This is precisely the manner in which Collective uses the word; it is an advertising network that offers a collection or collective of advertising opportunities. It is the manner in which Collective uses the word in the Collective Marks themselves ("collective" followed by another word or words) and in its descriptions of those marks. The word "collective" thus literally describes "an immediate idea of the ingredients,

10

qualities or characteristics" of Collective's product. See Bristol-Myers Squibb, 973 F.2d at 1040.

This holding is reinforced by the evidence supplied by CCM as to the third-party usage of the word "collective," as well as the treatment of applications containing the word by the PTO. The word "collective" is used in the name of over 7,000 businesses in 45 states. (CCM SOF ¶ 9.) There are over 25,000 Internet domain names that contain the word "collective." (Id. ¶ 12.) There are more than a dozen companies in the digital advertising and marketing field that also use the word "collective." (Id. ¶ 13.) Additionally, the PTO has either required disclaimer of the use of the word "collective" as being descriptive or rejected the application entirely on the same basis in 186 instances. (Id. ¶¶ 8, 14.)

Collective's Rule 56(d) motion does not alter this conclusion. At most, the motion describes the need for expert survey research in order to evaluate the strength of the "collective" stand-alone mark. (See 1/21/14 Andalman Decl. ¶¶ 6-8.) Though the impact of such potential discovery is discussed infra with respect to CCM's second basis for partial summary judgment, such discovery cannot reasonably be expected to create a genuine issue of material fact as to the descriptiveness of the word "collective." The Court thus grants CCM's motion for partial summary judgment and denies Collective's Rule 56(d) as to this issue.

B.     Strength of Mark

To prevail on a trademark infringement claim under the Lanham Act, like the claims asserted by Collective in its Answer & Counterclaims, a plaintiff must show that "it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion." Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 390 (2d Cir. 1995) (quoting Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072, 1075 (2d Cir. 1993)).

With respect to the latter requirement, courts in this Circuit are guided by the eight factors set forth by Judge Henry Friendly in Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492 (2d Cir. 1961). See Time, Inc. v. Petersen Pub. Co., 173 F.3d 113, 117 (2d Cir. 1999). Those eight factors are:

> (1) the strength of the mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will 'bridge the gap' . . . ; (5) actual confusion; (6) the defendant's good faith in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the buyers.

Arrow Fastener, 59 F.3d at 391 (citing Polaroid, 287 F.2d at 495). No one factor is dispositive; rather, the question for the court is whether consumers are likely to be confused. Playtex Prods., Inc. v. Georgia-Pacific Corp., 390 F.3d 158, 162 (2d Cir. 2004).

The first Polaroid factor, the strength of the mark, "refers to its distinctiveness, that is to say, the mark's ability to identify goods sold under it as coming from one particular source." Streetwise Maps, Inc. v. Vandam, Inc., 159 F.3d 739, 743 (2d Cir. 1998) (citing McGregor–Doniger Inc. v. Drizzle Inc., 599 F.2d

12

1126, 1131 (2d Cir. 1979)). "To gauge a mark's strength, we consider two factors: its inherent distinctiveness, and its distinctiveness in the marketplace." Streetwise Maps, 159 F.3d at 743 (citations omitted). "In somewhat circular fashion, consideration of this factor includes an evaluation of the same characteristics that initially determined a mark's validity: inherent distinctiveness, descriptiveness, and secondary meaning." Time, 173 F.3d at 117.

In substance, CCM asks this Court to grant it summary judgment as to the strength of any trademark rights Collective may have in "collective" as a stand-alone mark—it asks for a ruling that any such rights are "heavily diluted" and "commercially weak." (CCM Mem. of Law at 1, 22-23.) While it is certainly true that evidence of third-party usage, including the evidence provided by CCM and discussed supra, is persuasive as to the strength of a mark, see Estee Lauder Inc. v. Gap, Inc., 108 F.3d 1503, 1511 (2d Cir. 1997), it is insufficient to permit the grant of summary judgment requested at this time. The strength-of-mark inquiry includes an analysis of secondary meaning, see Time, 173 F.3d at 117, which CCM concedes requires further discovery in order to resolve. (See CCM Mem. of Law at 2; CCM Reply at 2, ECF No. 44.) CCM cites no cases that support the proposition that this Court may grant summary judgment as to strength of mark without regard to secondary meaning, especially at this stage of the proceedings—two months before the close of discovery and four months before trial. Further, Collective's counsel has put forth a declaration in support of its Rule 56(d) motion explaining its need for additional discovery—expert survey research, to be conducted by an expert it had

13

already retained as of the filing of the motion—in order to develop evidence as to the strength of "collective" as a stand-alone mark. (1/21/14 Andalman Decl. ¶¶ 6-8.)

At this time, genuine issues of material fact exist as to the strength of any rights Collective may have in "collective" as a stand-alone mark. Accordingly, CCM's motion for partial summary judgment on this basis is denied, and Collective's Rule 56(d) motion as to this argument is granted.

IV. CONCLUSION

For the reasons set forth above, both CCM's motion for partial summary judgment and Collective's motion pursuant to Rule 56(d) are GRANTED in part and DENIED in part.

The Clerk of Court is directed to close the motions at ECF Nos. 31 and 40.

SO ORDERED.

Dated: New York, New York
March 24, 2014

_____
KATHERINE B. FORREST
United States District Judge